UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

---

IN RE:

JOSHUA M. PERRY,                                            Case No. 15-12294-7

    Debtor.

---

## **MEMORANDUM DECISION**

This case involves a longstanding dispute between Joshua Perry ("Joshua") and Jennifer Perry ("Jennifer") stemming from their divorce proceedings in a Rock County Family Court. Following Joshua's discharge in bankruptcy, Jennifer returned to court in Rock County. Joshua filed a Motion for Contempt in this Court against Judge Daniel Dillon ("Judge Dillon"), Jennifer, and her attorney Mark Kopp ("Kopp"). This decision addresses the motion filed against Judge Dillon. As for the request to dismiss the motion and deny it against Jennifer and Kopp, the Court will set a further hearing on the motion.

**BACKGROUND**

Joshua and Jennifer married in 2000 and divorced in 2014. Judge Dillon presided over the divorce proceedings in a Rock County Family Court.[1] Under a Marital Settlement Agreement ("MSA"), Joshua was to pay Jennifer $1,000 bi-weekly for child support and $500.00 bi-weekly for maintenance for four years. ECF No. 55, Ex. 2 at 10. Joshua agreed to transfer $9,000.00 from a

---

[1] Case no. 14FA190.

retirement account to Jennifer's IRA. ECF No. 55, Ex. 2 at 11. Joshua assumed responsibility for all marital debts except for Jennifer's student loans. ECF No. 55, Ex. 2 at 12. Joshua retained full ownership of the homestead but agreed to allow Jennifer to lease it until their youngest child became an adult. ECF No. 55, Ex. 2 at 12. Jennifer paid rent to Joshua every month in the amount of the home's mortgage payments.

Joshua filed a voluntary chapter 7 petition in June 2015. About five months later, he received a discharge and the case was closed.

One week after Joshua's bankruptcy discharge, Jennifer filed a Motion for Contempt in Rock County ("State Court Action") alleging that he violated the MSA. ECF No. 55, Ex. 6. Kopp represented Jennifer in the State Court Action. Judge Dillon presided over the matter. The Motion for Contempt filed in the State Court Action alleged Joshua failed to:

1) pay child support and maintenance in full;
2) transfer $9,000 to Jennifer's IRA;
3) pay marital debts that he agreed to assume; and
4) to make mortgage payments on the residence awarded to him from the rent he collected from Jennifer.

ECF No. 55, Ex. 6. The house was later sold at a foreclosure sale.

In July 2016, Judge Dillon found Joshua in contempt for failure to meet his obligations under the MSA. Judge Dillon ordered Joshua to make payments of: (1) $6,138.66 for child support arrearage; (2) $3,069.34 for spousal support arrearage; (3) $9,649.73 to Jennifer's retirement account; (4) $7,500.00 in

2

attorney's fees; and (5) $4,974.00 for reimbursement of rent payments ("July Order"). The July Order also modified Joshua's bi-weekly maintenance obligations of $500.00 to be indefinite rather than for the four-year term specified in the MSA. ECF No. 55, Ex. 18.

Joshua appealed the July Order. The Wisconsin Court of Appeals affirmed and remanded for determination of attorney's fees. ECF no. 55, Ex. 39. Judge Dillon ordered Joshua to pay $14,698.83 in attorney's fees for the appeal.

Joshua then filed several motions in Rock County Circuit Court to vacate the July Order, as well as all later judgments against him related to the State Court Action. ECF No. 55, Ex. 47. Among the issues raised in those motions was whether Judge Dillon lacked standing and/or jurisdiction to make any ruling on the expired lease of the home. Joshua asserted that the order to return rent payments changed the final order of property division in violation of the discharge injunction under 11 U.S.C. § 524. ECF No. 55, Ex. 47 at 249.

Judge Dillon denied Joshua's motion to vacate and lifted the stay on previous orders stemming from the July Order. He determined that no debts owed to Jennifer were discharged in Joshua's bankruptcy and that no injunction existed from this Court to prohibit the Circuit Court from acting. Joshua was ordered to pay Jennifer $30,593.33 for rent and attorney's fees. ECF No. 43, Ex. B.

A Motion for Contempt was filed in this Court. The motion alleges the continued pursuit of the State Court Action constitutes a willful violation of the

discharge injunction. Joshua argues the State Court Action is "intended for no other reason than solely to harass and intimidate" him. He characterizes the State Court Action as an attempt to collect a discharged debt. The "lawsuit . . . is based on purported obligations arising from a debt that was allegedly incurred prior to the filing of [the petition]. As such, the debt owed is, without question, discharged." ECF No. 37 at 9 ¶ 31.

Further, Joshua seeks a determination that the underlying State Court Action is void. He argues the State Court Action is an unauthorized infringement on this Court's jurisdiction. As a result, according to the Motion for Contempt, Judge Dillon's order is void *ab initio* and the Court need not grant it full faith and credit.

Joshua argues Judge Dillon acted outside his official capacity when he, with actual knowledge of the discharge, ordered payments of additional maintenance indefinitely to compensate Jennifer for his "discharged debts."

Judge Dillon objects to the Motion for Contempt. ECF Nos. 48 and 57. He argues "Eleventh Amendment immunity and absolute judicial immunity bar the imposition of monetary sanctions against [him]." Also, he claims he was performing a judicial function when he issued rulings in the State Court Action and had subject-matter jurisdiction over the divorce proceedings. Finally, he contends any federal court review of state court orders is barred by *Rooker-Feldman*. According to Judge Dillon, Joshua cannot use this Court to attack the validity of the state court's judgments.

Jennifer and Kopp also seek dismissal of the motion. This decision, however, is limited to the request for dismissal of the motion against Judge Dillon.

## DISCUSSION

A.   Jurisdiction

The Court has the inherent power to enforce its own injunctions. *See Gervin v. Cadles of Grassy Meadows II, L.L.C. (In re Gervin)*, 337 B.R. 854, 857 (Bankr. W.D. Tex. 2005). This Court has jurisdiction to determine this matter pursuant to 28 U.S.C. § 1334. It is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

B.   Judge Dillon is entitled to judicial immunity.

The United States Supreme Court has consistently recognized the freedom judicial officers have to exercise their authority without fear of personal liability for decisions made in a judicial capacity. *See, e.g., Dennis v. Sparks*, 449 U.S. 24, 27 (1980); *Stump v. Sparkman*, 435 U.S. 349, 359 (1978). This is widely known as the doctrine of judicial immunity. It is applied broadly and shields judges even when they are alleged to have made an error or acted maliciously or corruptly. *Stump,* 435 U.S. at 356. "[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco,* 502 U.S. 9, 11 (1991).

Judicial immunity is not absolute. A judge is subject to liability when he or she acts without proper jurisdiction. *Bradley v. Fisher*, 80 U.S. 335, 351-52 (1871) ("Where there is clearly no jurisdiction over the subject-matter any

5

authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible.").

Judge Dillon argues he cannot be held in civil contempt for his adjudication of the State Court Action because of judicial immunity. Joshua contends Judge Dillon is not entitled to immunity because he lacked jurisdiction to issue the July Order finding Joshua in contempt. The party seeking absolute immunity bears the burden to establish that such immunity is justified. *Antoine v. Byers & Anderson, Inc.,* 508 U.S. 429, 433 (1993).

Courts conduct a two-part inquiry when considering judicial immunity: one, whether the judge was acting in his or her judicial capacity; and two, whether the actions, "though judicial in nature, [were] taken in the complete absence of all jurisdiction." *Mireles,* 502 U.S. at 11-12; *see Chapman v. Burton Berger & Assocs.,* 154 B.R. 258, 265 (Bankr. N.D. Ill. 1993) (finding for judicial immunity for a judge alleged to have erroneously entered orders because the actions were judicial in nature and not taken in the "clear absence" of jurisdiction).

To determine the first prong of the immunity analysis, this Court must consider whether the act was such that is normally performed by a judge and whether the parties to the State Court Action were dealing with Judge Dillon in his judicial capacity. *Stump,* 435 U.S. at 362. Judge Dillon presided over the parties' divorce proceedings. The duties of a circuit court judge are to consider the evidence presented and oral testimony given before issuing findings of fact

6

and conclusions of law. Judge Dillon did just that before finding Joshua in contempt and entering the July Order. The first prong is satisfied.

For the jurisdiction prong, this Court must interpret the scope of Judge Dillon's jurisdiction broadly. *Stump,* 435 U.S. at 356 ("[T]he scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge."). Joshua argues the Rock County Circuit Court lacked jurisdiction to order the return of rent payments to Jennifer as part of the July Order. He contends Judge Dillon wrongfully took notice of his foreclosure proceedings and overruled another state court judge's determination in the foreclosure action.[2] Judge Dillon counters, asserting that his actions did not change the foreclosure court's findings. Rather, Judge Dillon contends he modified the domestic support obligation owed to Jennifer.

Circuit court judges have the authority to modify domestic support obligations to account for a change in circumstances. *In re Zick,* 123 B.R. 825, 829 (Bankr. E.D. Wis. 1990) ("[T]he state court may find that the debtor's discharge constitutes a change of circumstances warranting an increase in maintenance or support of the former spouse or children.") (citing *Eckert v. Eckert,* 144 Wis. 2d 770, 424 N.W.2d 759 (Wis. Ct. App. 1988)). For purposes of the jurisdiction prong, it does not matter if this Court ultimately disagrees with Judge Dillon's modification of the property settlement, or whether such modifications violated the automatic stay under 11 U.S.C. § 362. The Court is

---

[2] Case No. 16CV001.

bound by precedent to focus solely on whether Judge Dillon had jurisdiction over the State Court Action.

Bankruptcy courts have jurisdiction over all aspects of property of the estate, including the power to adjudicate the rights of the spouses to property. *In re Sokoloff*, 200 B.R. 300 (Bankr. E.D. Pa. 1996). This jurisdiction does not, however, extend to decisions related to the amount or modification of support obligations. That subject is left to the jurisdiction of the state courts.

While a bankruptcy petition operates as a stay against all acts to acquire property of the debtor or to recover a debt from the debtor, there are exceptions. Child custody and payment of domestic support obligations are two such exceptions. *See* 11 U.S.C. § 362(b)(2). The stay continues until the case is closed or the debtor is discharged. 11 U.S.C. § 362(c). The discharge injunction then replaces the stay. This enjoins action to collect on a discharged debt but does not enjoin action to recover or modify domestic support obligations.

Judge Dillon is a circuit court judge. He entered the original judgment of divorce back in 2014. The State Court Action contempt motion sought a remedy related, among other things, to unpaid child support and maintenance. Those two subjects were certainly within the authority of the circuit court. Judge Dillon then entered an order holding Joshua in contempt for failure to honor obligations under the MSA. Judge Dillon has authority to make decisions in family court cases and to issue contempt orders. Judge Dillon's actions were not taken in the "clear absence" of jurisdiction. The second prong is satisfied.

Finding that Judge Dillon acted within his judicial authority means he has judicial immunity. It does not, however, mean that all of his orders or findings are enforceable. Modification of property division, for example, is not allowed and would violate the discharge injunction. *See, e.g., In re Tostige*, 283 B.R. 462 (Bankr. E.D. Mich. 2002), and *In re Fluke*, 305 B.R. 635 (Bankr. D. Del. 2004). Judge Dillon told the parties they should return to this Court for guidance on some topics. Neither Joshua nor Jennifer, through Attorney Kopp, did so.

This Court need not determine whether Judge Dillon's decisions were made in error or were wrong on the merits to decide whether to deny the motion with regard to him. Judge Dillon acted in his judicial capacity and had jurisdiction over the divorce proceedings before him since 2014. Judge Dillon is entitled to judicial immunity.

## CONCLUSION

For the foregoing reasons, the Motion for Contempt against Judge Dillon is denied. The Court reserves for further hearing the issues raised with respect to Jennifer and Kopp.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: September 13, 2019

BY THE COURT:

_____
Catherine J. Furay
U.S. Bankruptcy Judge